## LIBBEY v. TUFTS et al.

### (Supreme Court, General Term, First Department. May 18, 1888.)

MORTGAGES—SALE OF MORTGAGED PROPERTY—RELEASE OF ONE PARCEL.

On foreclosure of a mortgage, it appeared that it formerly covered two lots which the mortgagor had sold free from this lien; that one of the lots was sold to A., who took possession by a tenant, but did not receive a deed until some time thereafter. After A. thus took possession, but before he received his deed, B. purchased the other lot, received his deed, and went into possession. After A. received his deed, the mortgagee released the lien on his lot. *Held*, that the lien on B.'s lot was not thereby destroyed, as it would be subject to sale first if the mortgage had not been discharged on the other lot.

Appeal from judgment on report of AUGUSTUS C. BROWN, Referee.

Jonas M. Libbey brought this action, against Lewis C. Tufts and Michael and Mary Duffy, to foreclose a mortgage originally given by the defendant Duffy to the plaintiff for $125,000 upon eight full lots of land, and the ten houses built thereon, situated on the easterly side of First avenue, between Seventy-Ninth and Eightieth streets, in the city of New York. Eight of the houses were built upon the fronts of the eight lots, and the remaining two houses were built across the rear ends of the eight lots, and faced, one upon Seventy-Ninth street and one upon Eightieth street. Formerly these lots, with others in the same block, belonged to the plaintiff, and in June, 1882, he entered into an agreement with the defendant Michael Duffy whereby, for the sum of $305,000, he agreed to convey certain lots in the block to said Duffy, including those in question, upon the performance by the said Duffy of certain covenants, among which was the erection of houses thereon. The purchase price of these particular eight full lots was $70,000, and the agreement also provided for an advance by the plaintiff of $5,000 per house to aid in construction. Upon the completion of the houses, which was to be on December 1, 1882, the said Duffy was to procure a permanent loan, pay to the plaintiff the purchase price and advances, with interest, and receive his deed. On January 29, 1883, the ten houses not yet being completed, the plaintiff, the defendants Duffy, and one Phebe Pearsall, entered into an agreement in which it was recited that the plaintiff was about to deed the eight lots to the defendant Mary Duffy, and to take a mortgage for $125,000 to secure the purchase price and his advances, and the said Mary Duffy thereby agreed to go on and complete the ten houses, and the said Phebe Pearsall agreed to make advances as the work progressed to the amount of $115,000, taking Mrs. Duffy's bonds, secured by a mortgage, upon each house for such advances; and the plaintiff agreed that his mortgage should be a second lien to those of Miss Pearsall. Pursuant to this agreement the deed was given by the plaintiff to Mrs. Duffy; the bonds and mortgages to Miss Pearsall were executed and delivered by Mrs. Duffy; and the bond and mortgage to the plaintiff were

executed and delivered by both the Duffys,—the latter mortgage being the one for the foreclosure of which this suit is brought. The amended complaint alleges, among other things, that after the making of the bond and mortgage, and prior to the 1st day of August, 1883, the plaintiff advanced to the defendants Duffy several sums of money, which, with the purchase price of lots, amounted to $123,149.61, exclusive of interest; that at various times the plaintiff executed and delivered to them releases, whereby he released all of the mortgaged premises except the one lot facing on Eightieth street, which in August, 1883, was conveyed by the Duffys to the defendant Tufts; that, from time to time, the defendants Duffy paid to the plaintiff various sums of money, amounting in the aggregate to $121,500, whereby they paid the interest accruing upon the mortgage debt to said 1st day of August, 1883, and all of the principal except $3,603.22, and made default to that extent,— the sum secured by the mortgage having fallen due July 1, 1883; that on August 1, 1883, an account was stated between the plaintiff and defendants Duffy, and it was ascertained that said last-mentioned sum was due; and that the said defendants promised to pay it, but have not done so; and prays foreclosure for the sum of $3,603.22, and sale of the said Eightieth street lot. The answer of the defendant Tufts sets up that by deed dated August 1, 1883, the defendants Duffy conveyed the Eightieth street house and lot to him, free and clear except as to a mortgage of $9,000 held by Miss Pearsall, and that plaintiff had notice of such conveyance at the time, and from that date knew that Tufts was the owner; that, at the time of such conveyance, the plaintiff's mortgage was a lien on said Eightieth street lot, and also on the lot in rear thereof, facing on Seventy-Ninth street; that on August 29, 1883, the defendants Duffy conveyed the Seventy-Ninth street lot to one James Kane; that thereafter, and in October, 1883, the plaintiff, with the knowledge of the prior conveyance to Tufts, released from the lien of his mortgage the Kane lot, which was of sufficient value to satisfy the whole amount due on the mortgage, and that thereby the Tufts lot was discharged from the lien of the mortgage. The cause came on for trial on June 17, 1885, at the special term,· and, after putting in evidence a power of attorney from the defendant Mary Duffy to her husband, the bond and mortgage, and certain releases of portions of the mortgaged premises by the plaintiff to Mary Duffy, the plaintiff rested. The defendants moved to dismiss the complaint on the ground that no proof had been given as to the account stated, nor of the amount due. The court denied the motion, and on the same day, the parties acquiescing, made an order reciting that it appearing that an account was involved as to the amount due, and the case was referred to Augustus C. Brown, Esq., counselor at law, to take proofs, and report as to the amount due; and the trial was suspended until the coming in of such report. The referee found the facts as above stated, and as appears in his opinion below, and judgment was entered upon his report in favor of the plaintiff, and defendant Tufts appealed. By stipulation, no questions were raised on the appeal except those growing out of the release to Kane. That portion of the referee's opinion which relates to the release, and which was adopted by the court on appeal, was as follows:

"The third and last question is, did the release of the Kane lot on October 8, 1883, operate to discharge the lien of the mortgage for whatever was due from the Tufts lot? It is not disputed that Tufts received his deed on August 6th or 7th; that Kane got his deed about August 29th; and that the release was given October 8th, and with knowledge in plaintiff, through his agent, Sexton, that Tufts had received his deed at the time mentioned. The plaintiff proved that as early as February, 1883, Kane had an agreement in writing under seal with Michael Duffy alone, whereby it was agreed, among other things, that, upon the completion by Kane of certain plumbing work to be done by him in the 10 houses covered originally by plaintiff's mortgage, Duffy

would pay him $2,000 in cash, and $7,000 by conveying to him by a warranty deed, free and clear except as to a $10,000 mortgage, the Seventy-Ninth street house, which was afterwards actually conveyed to him by Mary Duffy and Michael.   This agreement contained a clause to the effect that, at any time before title should actually pass to Kane, Duffy might sell the house, and pay Kane the $7,000 in cash or its equivalent, or so much thereof as Kane should have earned at the date of any such sale.   The plaintiff also proved that through his agent, Sexton, he had knowledge of this agreement in June, 1883, and also proved, by a fair preponderance of evidence, I think, that Kane completed the performance of his part of the agreement early in July, and during that month entered into the possession of the Seventy-Ninth street house, and collected rent from a tenant therein.   Upon these facts the plaintiff claims that, by releasing the Kane lot, he did not discharge the Tufts lot from the lien of his mortgage.   The defendant Tufts meets this claim with the proposition—*First*, that the agreement was not the agreement of Mary Duffy, the then owner owner of the property; *second*, that the agreement was in the alternative on Duffy's part, either to convey or pay cash; and, *third*, that if the agreement be deemed to be Mary Duffy's, and to be absolute to convey, yet, as Kane did not actually get his deed until after Tufts got his, Tufts' must be considered the prior conveyance in applying the rule invoked in his answer. The rule requiring premises to be sold, under a decree of foreclosure, in the inverse order of alienation, is purely an equitable rule, based upon the idea that 'the first grantee of a part of mortgaged premises, who has purchased for full value, and without any agreement to assume the mortgage, may justly claim that the burden of the incumbrance shall be cast, in the first instance, upon the remaining lands of the grantor, and a second or other grantee takes subject to the equity of the prior grantee.'   *Bernhardt* v. *Lymburner*, 85 N. Y. 175.   It is not, however, an inflexible or arbitrary rule even of equity. *Kendall* v. *Woodruff*, 87 N. Y. 7.   The question, then, is, which conveyance, upon the facts presented in this case, and upon the principles of natural equity and justice, ought to be treated as the prior conveyance?   Mary Duffy had, in 1880, given to her husband, Michael, a very general power of attorney, among other things authorizing him, in her name or otherwise, to contract to sell and to convey, for such consideration as he should see fit, any real estate which she should thereafter become seized or possessed of.   Mary acquired the property, including the Kane lot, in January, 1883, and was engaged in building houses upon it.   In February, Michael, in his own name, made the contract with Kane, who was to furnish materials and do work upon this property, and in part payment agreed to convey the house in question.   Kane knew of the power of attorney, and he furnished the materials and did the work, and Mary had the benefit of them.   Michael, Mary's agent, put Kane into possession of the house mentioned in the contract some time in July, and in August Mary gave Kane the promised deed.   The agreement was therefore in equity Mary's, not only because she expressly authorized such agreements in advance, but because she subsequently ratified this particular one, and received and enjoyed the fruits of it.   See *Hensler* v. *Sefrin*, 19 Hun, 564, and *Krumm* v. *Beach*, 96 N. Y. 398.   What, then, was the effect upon this agreement of the clause reserving a right to sell the lot at any time before title actually passed to Kane?   It does not seem to me that this inquiry is very material, inasmuch as the privilege was not in fact exercised.   Still it may be well to consider for a moment the relation of the parties in view of this clause. Did it mean that, after Kane had performed his contract, Duffy might postpone indefinitely the delivery to him of a deed, and thus keep him out of both money and property, or, read in connection with the other terms of the contract, which required payment to be made on completion of the work, did it mean that Duffy might sell at any time during the prosecution of the work by Kane, but forthwith, upon its completion, he was to have his money or

the house? I think the latter construction is the proper one; and as Kane performed early in July, and as Duffy did not then pay or offer to pay him in cash, but, instead, let him into possession of the premises, it was a waiver of the right to sell the property to any one else, and Kane thereupon became entitled to a conveyance. Kane was recognized in the contract as having an interest in the house from the date of the contract, for, in case of its sale at any time, Duffy was to account to him for so much of the proceeds as he was then entitled to; and I think the true interpretation of this clause is that it was an option reserved by Duffy, which, if not exercised, in no way affected the interest which Kane had in it as a contract for the sale of land. If, however, it was not a contract with an option, or a contract in the alternative, then the putting of Kane in possession was an election to make it an absolute contract for a sale of land. As early as July, then, Kane had a contract for the sale to him of the premises afterwards deeded to him, which was in equity Mary's contract, and he was in possession under this contract. This, in equity, vested the estate in him, though his legal title was still in Mary Duffy, (*Champion* v. *Brown*, 6 Johns. Ch. 398;) and, if plaintiff had foreclosed his mortgage on August 1st, Kane would have been entitled to have the lot afterwards sold to Tufts, first sold to pay the mortgage debt. *Trustees* v. *Wheeler*, 61 N. Y. 88. It is not material to decide whether or not Kane could have maintained an action against Mary Duffy upon a contract to which she was not in terms a party,—the point now under consideration being whether, as between him and her, he was not equitably entitled to invoke the rule that the mortgaged premises should be sold in the inverse order of their alienation; and I think, beyond doubt, he was. Tufts was the grantee of Mary Duffy. When he purchased the Eightieth street lot, Kane was in possession of the Seventy-Ninth street lot, and this was notice to every one of Kane's rights. *Trustees* v. *Wheeler, supra.* The fact that he was in possession by a tenant only is immaterial, (*Bank* v. *Flagg*, 3 Barb. Ch. 316,) as also the fact that his contract was not recorded, (*Ellis* v. *Horrman*, 90 N. Y. 466.) Tufts cannot, therefore, complain that any injustice is done him in holding that he stands, with reference to Kane, precisely in the position of his grantor. Thus far we have considered the situation as it was, and the rights of the parties as they appeared to be, when Tufts took his deed; but if we also take into consideration the fact that Kane actually got a deed from Mary Duffy before the release was given, and thus his title related back at least to the time when he was entitled to the deed, it seems to me that all possible question of Kane's right to priority is laid at rest. It was proved upon the trial that Tufts also furnished materials and did work upon houses of Mary Duffy, and that he had a verbal contract with Duffy that he, too, should have a house and lot in part payment; but as he could not give the date of this agreement with any certainty, and admitted that he did not get the house his agreement called for, and was not in possession of any house until August 6th or 7th, I do not think that he took any title, legal or equitable, until he actually received his deed. My conclusion upon the whole case is that, at the time of the commencement of the suit, there was due to the plaintiff, on the bond and mortgage, the sum of $1,801.61, with interest from August 1, 1883, and that for that sum, and the costs of the action, he is entitled to judgment of foreclosure and sale as to the Tufts lot, and for deficiency, if any, against the defendants Duffy."

Argued before VAN BRUNT, P. J., and MACOMBER and BARTLETT, JJ.

*Austin G. Fox* and *John Theall*, for appellant. *Noah Davis* and *Work & McNamee*, for respondent.

PER CURIAM. We are satisfied with the conclusions reached by the referee in this case, and with his reasons for them. He has discussed the various questions so fully that it is unnecessary to add anything to what he has said. The judgment should be affirmed, upon his opinion, with costs.